1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

| | |
|---|---|
| ESTATE OF MICHAEL ROWLAND, by and through its personal representative, Karen Rowland, and in her individual capacity, et al., | CASE NO. 2:24-cv-01240-LK<br><br>ORDER GRANTING MOTION FOR PARTIAL DISMISSAL |
| Plaintiffs, | |
| v. | |
| KING COUNTY et al., | |
| Defendants. | |

17

18      This matter comes before the Court on Defendant King County's motion to dismiss the

19 Estate of Michael Rowland's claim under *Monell v. Department of Social Services*, 436 U.S. 658

20 (1978). Dkt. No. 29. For the reasons set forth below, the Court grants the motion.[1]

21

22

23

24

---

[1] Because this matter can be decided based on the written submissions, the Court denies Plaintiffs' request for oral argument. Dkt. No. 39 at 1.

ORDER GRANTING MOTION FOR PARTIAL DISMISSAL - 1

# I.  BACKGROUND

On April 19, 2022, Michael Rowland[2] was arrested by Seattle police at the Sheraton Hotel following reports of a disturbance. Dkt. No. 26 at 2. During his interactions with law enforcement, Mr. Rowland behaved erratically and made several "non sensical [sic]" statements, leading officers to believe that he was experiencing a mental health episode. *Id.* at 2, 9. Officers eventually used physical force to arrest Mr. Rowland. *Id.* at 2, 9–10. He was then transferred via ambulance to the King County Correctional Facility ("KCCF") in Seattle. *Id.* at 2. A spit mask had been placed on Mr. Rowland by law enforcement; he arrived at KCCF with it still in place. *Id.* at 10. His limbs were also strapped down to a gurney during transit. *Id.*

According to the complaint, jail staff failed to properly screen Mr. Rowland for "physical or mental issues" before accepting him into custody. *Id.* at 3, 10. However, he had "obvious and noteworthy injuries that staff members should have immediately recognized and treated," including a leg injury. *Id.* at 3; *see also id.* at 10–11. Jail staff also "knew or should have been aware" that Mr. Rowland had mental health issues. *Id.* at 11. An individual in a nearby holding cell witnessed correction officers rolling a handcuffed Mr. Rowland down the hall in a restraint chair with the spit mask still in place. *Id.* at 3. The corrections officers put Mr. Rowland in a prone position and restrained him while they changed him out of his street clothing and into jail-issued clothing. *Id.* at 3, 11–12. The spit mask was then removed, and jail staff left Mr. Rowland in the prone position on the floor of his cell. *Id.* at 12. Shortly thereafter, a corrections officer noticed that Mr. Rowland was not breathing; he was later pronounced dead. *Id.* The King County Medical Examiner noted in her autopsy report that Mr. Rowland had a number of blunt force injuries and died suddenly during physical restraint. *Id.*

---

[2] Plaintiffs also spell the decedent's first name as "Micheal." *See* Dkt. No. 26 at 2; Dkt. No. 39 at 6–8. The Court uses the spelling in the complaint's caption. Dkt. No. 26 at 1.

ORDER GRANTING MOTION FOR PARTIAL DISMISSAL - 2

1    Karen Rowland, Mr. Rowland's widow, has sued King County in her capacity as personal

2  representative of Mr. Rowland's estate as well as in her individual capacity. *Id.* at 1, 4. The

3  complaint also states that Candace Robinson "asserts claims in this lawsuit for the loss of society

4  and companionship with her father." *Id.* at 4. But Ms. Robinson is not listed in the caption of the

5  complaint, *id.* at 1, and relevant briefing in this case refers to Ms. Rowland/the Estate as "Plaintiff"

6  in the singular, *see generally* Dkt. No. 39. However, it seems that this is yet another careless

7  mistake, *see* Dkt. Nos. 18, 19, 21; *supra* n.2; *infra* at 10, as it appears that the complaint intends to

8  advance claims on behalf of Ms. Robinson as well as Ms. Rowland and the Estate, Dkt. No. 26 at

9  1, 4. Accordingly, the Court will refer to those complainants collectively as "Plaintiffs."

10    Plaintiffs advance four causes of action: (1) "Count I – Fourth Amendment," which appears

11  to advance an excessive force claim by the Estate under the Fourth and Fourteenth Amendments

12  against all Defendants; (2) "Count II—State Law Claim[:] Negligence" by Plaintiffs against all

13  Defendants; (3) Count III–State Law Claim[:] Wrongful Death" by Plaintiffs against all

14  Defendants; and (4) an unnumbered count titled "Monell Claim" by the Estate against King County

15  and KCCF. *Id.* at 13–19.

16    King County moves to dismiss the *Monell* claim because the Estate "fails to sufficiently

17  plead any longstanding custom or express policy, training program deficiency, or policymaker

18  ratification that would establish such a claim." Dkt. No. 29 at 2.

## II.    DISCUSSION

20  **A.    Jurisdiction**

21    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

22  because Plaintiffs advance claims against Defendants under 42 U.S.C. § 1983. Dkt. No. 26 at 7.

23  The Court has supplemental jurisdiction over Plaintiffs' state law claims because they arise from

24  the same underlying facts as the federal claims. *See* 28 U.S.C. § 1367(a); *Bahrampour v. Lampert*,

1    356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when

2    it shares a common nucleus of operative fact with the federal claims and the state and federal

3    claims would normally be tried together." (quotation marks omitted)).

4         Venue is proper in this Court because at least some Defendants reside in the Western

5    District of Washington, 28 U.S.C. § 1391(b)(1), and because the events giving rise to the claim

6    occurred in this judicial district, 28 U.S.C. § 1391(b)(2).

7    **B.      Legal Standard**

8         Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory

9    or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular*

10   *Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). At this stage, the Court accepts as true

11   all factual allegations in the complaint and construes them in the light most favorable to the

12   nonmoving party. *Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986,

13   991 (9th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual

14   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

15   556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] Such

16   statement must be "short and plain." Fed. R. Civ. P. 8(a)(2) (a plaintiff must make a "short and

17   plain statement of the claim showing that [it] is entitled to relief"). A claim is facially plausible

18   "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

19   that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed

20   factual allegations" are not required, a complaint must include "more than an unadorned, the-

21

22   ---
     [3] Plaintiffs argue that their claim should not be dismissed unless "it appears beyond doubt that the[y] can prove *no* set
     of facts in support of [their] claim which would entitle [them] to relief." Dkt. No. 39 at 4 (quoting *Conley v. Gibson*,
23   355 U.S. 41, 46 (1957)). As King County points out, Dkt. No. 43 at 2, the Supreme Court has since abrogated *Conley*'s
     "no set of facts" language, observing that it "has been questioned, criticized, and explained away" to the point that it
     "has earned its retirement"; "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading
24   standard," *Twombly*, 550 U.S. at 563.

ORDER GRANTING MOTION FOR PARTIAL DISMISSAL - 4

1   defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels and

2   conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

3   (quoting *Twombly*, 550 U.S. at 555); *see also Benavidez v. Cnty. of San Diego*, 993 F.3d 1134,

4   1145 (9th Cir. 2021) (conclusory allegations of law and unwarranted inferences will not survive a

5   motion to dismiss).

6   **C.      Scope of the Record**

7          As an initial matter, because the parties dispute which documents the Court may review at

8   the dismissal stage, the Court addresses the scope of the record.

9          Review of a motion to dismiss is "generally limited to the face of the complaint," but a

10  court may consider "materials incorporated into the complaint by reference, and matters of which

11  [it] may take judicial notice." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 875–76 (9th Cir.

12  2012). Otherwise, if "matters outside the pleadings are presented to and not excluded by the court,

13  the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

14         Plaintiffs request that the Court take judicial notice of (1) an August 16, 2022 letter from

15  the Chief Operating Officer and Director of Performance, Strategy and Budget for King County to

16  a senior staff attorney with the ACLU of Washington, addressing a jail staff shortage at KCCF,

17  Dkt. No. 40-1 (the "ACLU Letter"); and (2) a KCCF-authored Unexpected Fatality Review

18  Committee Report regarding Mr. Rowland's death while in custody (the "KCCF Report").

19  Plaintiffs heavily rely on these documents to prop up their deficient *Monell* theories. *See, e.g.*, Dkt.

20  No. 39 at 7 (relying on the KCCF Report in support of their failure-to-train theory); *id.* at 7–9

21  (relying on the KCCF Report and ACLU Letter in support of their official-policy theory); *id.* at 9

22  (relying wholly on the KCCF Report and ACLU Letter in support of their ratification theory).

23         King County opposes Plaintiffs' request on the basis that the ACLU Letter "was not

24  attached to [the] pleading as part of the record before the Court" and the KCCF Report's

1  "statements, findings, and recommended actions, while discoverable, are inadmissible in a civil

2  proceeding, and therefore cannot be considered for this purpose and should be stricken from the

3  record." Dkt. No. 43 at 2–3.

4          1.  Judicial Notice

5          Judicial notice of "adjudicative facts"—i.e., facts "to which the law is applied in the process

6  of adjudication" that "normally go to the jury" and "relate to the parties, their activities, their

7  properties, their businesses," *Valdivia v. Schwarzenegger*, 599 F.3d 984, 994 (9th Cir. 2010)

8  (quoting Fed. R. Evid. 201, Advisory Committee Notes)—is appropriate under Rule 201 of the

9  Federal Rules of Evidence when such facts are "not subject to reasonable dispute," meaning the

10  facts "can be accurately and readily determined from sources whose accuracy cannot reasonably

11  be questioned." Fed. R. Evid. 201(a)–(b). But a court must not take judicial notice "so as to supply,

12  without formal introduction of evidence, facts essential to support a contention in a cause then

13  before it." *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983).

14  Furthermore, "[j]ust because [a] document itself is susceptible to judicial notice does not mean

15  that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v.*

16  *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

17          Here, the two documents at issue are not properly subject to judicial notice. The ACLU

18  Letter is not an adjudicative fact, and even assuming without deciding that the KCCF Report is

19  such a fact (and it appears that it is not, *see* Fed. R. Evid. 201, Advisory Committee Notes; Wash.

20  Rev. Code § 70.48.510(3)(c)), it is not appropriate for judicial notice. On a Rule 12(b)(6) motion

21  to dismiss, when a court takes judicial notice of a document, it may do so "not for the truth of the

22  facts recited therein, but for the existence of the [document], which is not subject to reasonable

23  dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)

24  (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d

1    410, 426–27 (3rd Cir. 1999)); *see also Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1117 n.14 (9th

2    Cir. 2005) (declining to take judicial notice of findings made in another state court proceeding

3    "because [defendants were] offering the factual findings contained in the order for the purpose of

4    proving the truth of the factual findings contained therein[]"). Based on their arguments, Plaintiffs

5    seek to have the Court consider the truth of facts contained in the two documents. *See, e.g.*, Dkt.

6    No. 39 at 7 ("Defendants stated in their [KCCF] Report it was 'very rare' for an arrested individual

7    to be transported to the King County jail on a stretcher for non-medical reason [sic]."); *id.* ("The

8    [ACLU] Letter mentions that several individuals beside Micheal Rowland had their constitutional

9    rights may have been violated by policies or practices[.]"); *id.* at 9 ("Defendant was aware and

10   knew of the constitutional violations at KCCF as set forth in [the ACLU] Letter, and . . . the

11   [KCCF] Report."). In other words, "Plaintiffs seek to circumvent the fact that they have pled no

12   facts" to make their *Monell* theories plausible by asking that the court take judicial notice of the

13   ACLU Letter and the KCCF Report. *Freeney v. Bank of Am. Corp.*, No. CV1502376MMMPJWX,

14   2015 WL 4366439, at *17 (C.D. Cal. July 16, 2015). "Plaintiffs' attempt to amend their complaint

15   through judicial notice to include facts purportedly demonstrating [their theories] is improper."

16   *Id.*; *see also Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1350 (C.D.

17   Cal. 2014) ("Plaintiffs cannot utilize the [judicially noticeable] documents to amend the complaint

18   and defeat defendants' motions to dismiss"); *Rashdan v. Geissberger*, No. C-10-00634-SBA, 2011

19   WL 197957, at *8 (N.D. Cal. Jan. 14, 2011) ("It is well settled . . . that a plaintiff cannot avoid

20   dismissal of a deficiently-pled claim by citing facts in her opposition, where such facts are absent

21   from the pleadings. Nor may the Court take judicial notice of these web postings for the truth of

22   the facts asserted therein[.]").

23

24

ORDER GRANTING MOTION FOR PARTIAL DISMISSAL - 7

1          2.    Incorporation by Reference

2          A document can be considered "incorporated by reference into a complaint if the plaintiff

3  refers extensively to the document or the document forms the basis of the plaintiff's claim." *United*

4  *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Ninth Circuit has distilled the inquiry into

5  a three-part test: (1) the complaint must refer to the document; (2) the document must be central

6  to the plaintiff's claim; and (3) the document's authenticity must be undisputed. *Daniels-Hall v.*

7  *Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *accord Segar v. Allstate Fire & Cas. Ins.*

8  *Co.*, No. C21-1526-JLR, 2022 WL 102035, at \*5 (W.D. Wash. Jan. 11, 2022). "[T]he mere

9  mention of the existence of a document is insufficient to incorporate the contents of a document."

10 *Khoja*, 899 F.3d at 1002 (quoting *Ritchie Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th

11 Cir. 2010)).

12         Neither document at issue here is incorporated by reference in Plaintiffs' complaint.

13 Plaintiffs do not mention the KCCF Report anywhere in their complaint. *See generally* Dkt. No.

14 26. And although Plaintiffs mention the ACLU Letter in four paragraphs in their complaint, *id.* at

15 9,[4] the complaint does not attach the letter, never references the letter again, and does not connect

16 the dots between the facts alleged in these four paragraphs and the Estate's *Monell* theories. *See*

17

18 ─────────────────────

[4] The four paragraphs are as follows:

19     38. In August 2022, King County through Dwight Dively, Chief Operating Officer and Director,
       Performance, Strategy and Budget for King County, sent the ACLU of Washington a letter
20     containing information about King County's actions in KCCF that likely constituted serious issues.
       See Exbibit [sic] A.

21     39. In its August 2022 letter, King County admitted that many incarcerated individuals were not
       receiving mental health care or follow-up treatment.

22     40. In its August 2022 letter, King County provided information showing that individuals
       incarcerated at KCCF were not receiving medical care as required.

23      41. In its August 2022 letter, King County admitted that individuals incarcerated at KCCF were not
       receiving mental health care as required.

24 Dkt. No. 26 at 9.

ORDER GRANTING MOTION FOR PARTIAL DISMISSAL - 8

1    *generally id.* This does not suffice to render the ACLU Letter "the basis of" the Estate's *Monell*

2    claim.

3         For these reasons, the Court declines to consider the ACLU Letter or the KCCF Report in

4    connection with the motion to dismiss, and grants King County's request to strike the KCCF

5    Report from the record.

6    **D.    *Monell* Claim**

7         In *Monell v. Department of Social Services of the City of New York*, the Supreme Court

8    held that municipalities may only be held liable under Section 1983 for constitutional violations

9    resulting from official policy or custom. 436 U.S. at 694. However, "a municipality cannot be held

10   liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held

11   liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. The imposition of *Monell* liability

12   on a municipality under Section 1983 generally occurs in three situations: (1) when the

13   municipality acts pursuant to an expressly adopted official policy; (2) when the municipality acts

14   pursuant to a longstanding practice or custom, including when it fails to train its employees

15   adequately; and (3) when the individual who committed the constitutional tort was an official with

16   final policy-making authority or such an official ratified a subordinate's unconstitutional decision

17   or action and the basis for it. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973–74 (9th Cir. 2021); *see*

18   *also Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013).

19        As King County argues, the language in the amended complaint suggests that the Estate

20   intends to assert all three theories of *Monell* liability in this case. Dkt. No. 29 at 7 (citing Dkt. No.

21   26 ¶¶ 9, 64–68, 77, 78). King County urges the Court to dismiss the entirety of the Estate's *Monell*

22   claim because it "fails to sufficiently plead any longstanding custom or express policy, training

23   program deficiency, or policymaker ratification that would establish such a claim." *Id.* at 2.

24   Plaintiffs oppose the motion, but their response brief, which is riddled with typos and other

1    mistakes, is unhelpful to the Court because it largely fails to provide citations supporting its

2    assertions, in violation of Local Civil Rule 10(e)(6). *See, e.g.*, Dkt. No. 39 at 6–9. Such a failure is

3    especially self-defeating in this context, where Plaintiffs must establish the sufficiency of their

4    complaint but rarely provide citations to any supposedly satisfactory allegations. *See generally id.*

5    This is not the first time that this Court has encountered this problem with counsel for Plaintiffs.

6    *See Avery v. City of Seattle*, No. 2:22-CV-00560-LK, 2024 WL 2959541, at *10 n.9 (W.D. Wash.

7    June 12, 2024) ("Plaintiffs repeatedly fail to provide specific citations to the record—and often

8    provide no citations at all.").[5] As in *Avery*, the Court declines to assist Plaintiffs by locating

9    citations for them. *Id.*; *see also Ayers v. Richards*, No. C08-5390 BHS/KLS, 2010 WL 4366069,

10    at *2 (W.D. Wash. Aug. 3, 2010), *report and recommendation adopted*, 2010 WL 4365555 (W.D.

11    Wash. Oct. 28, 2010); *see also Ramsey v. Muna*, 819 F. App'x 505, 507 (9th Cir. 2020) (courts

12    "are not like pigs, hunting for truffles buried in briefs[,] and cannot manufacture arguments for a

13    [litigant]" (cleaned up)).

14          1.   Failure to Train

15          The Estate alleges that:

16          King County and KCCF failed to adequately train and equip the Defendant officers
           and KCCF staff with the tools necessary to address issues related to screening of
17          incoming inmates/detainees. The Defendant officers and KCCF staff clearly had
           inadequate training as evidenced by the fact that KCCF staff failed to provide Mr.
18          Rowland with adequate and timely health care[,] . . . failed to properly screen,
           assess and recognize Mr. Rowland's health needs[, and] . . . failed to conduct a
19          medical screening . . . prior to taking custody.

20    Dkt. No. 26 at 13. King County contends that the Estate insufficiently pleads its failure-to-train

21    *Monell* claim because (1) "[a]n isolated act of an individual employee does not demonstrate a

22    _____

23    [5] *See also Fuhr v. City of Seattle*, No. 2:23-CV-0600-BJR, 2024 WL 3924562 (W.D. Wash. Aug. 23, 2024); *Gratton v. City of Tukwila*, No. 2:22-CV-01598-TL, 2024 WL 580787, at *12 (W.D. Wash. Feb. 13, 2024); *Starling v. Walmart Inc.,* No. C21-1156-RSM-MLP, 2022 WL 16815541, at *10 (W.D. Wash. Sept. 22, 2022), *report and recommendation*
24    *adopted,* 2022 WL 16775286 (W.D. Wash. Nov. 8, 2022); *Hunter v. City of Fed. Way*, No. C16-1445RSL, 2017 WL 6406019, at *4 (W.D. Wash. Dec. 15, 2017).

ORDER GRANTING MOTION FOR PARTIAL DISMISSAL - 10

1    failure to train"; (2) "Plaintiff fails to identify any specific training policy or program of KCCF

2    corrections officers or Jail Health Services nurses who work in the booking area of the jail";

3    (3) "Plaintiff fails to identify any facts or incidents other than Rowland's case that might put King

4    County on notice of likely constitutional deprivations based on training deficiencies"; and

5    (4) "Plaintiff fails to allege facts that show King County disregarded a known or obvious

6    consequence that a particular omission in a training program related to booking procedures and

7    medical screenings would cause King County employees to violate the constitutional rights of

8    those being booked." Dkt. No. 29 at 9–10. In its opposition brief, the Estate argues that its

9    discovery is "ongoing" and that it "is inquiring whether the unknown jail staff/officers' actions

10   and behavior were in line with their training[.]" Dkt. No. 39 at 7.

11          "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where

12   the failure to train amounts to deliberate indifference to the rights of persons with whom the police

13   come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Inadequate training "may

14   fairly be said to represent a policy for which the city is responsible, and for which the city may be

15   held liable if it actually causes injury," if "the need for more or different training is so obvious,

16   and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers

17   of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

18   Under this standard, Plaintiffs must show that the City "disregarded the known or obvious

19   consequence that a particular omission in their training program would cause municipal employees

20   to violate citizens' constitutional rights." *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1159 (9th

21   Cir. 2014) (cleaned up). "A municipality's culpability for a deprivation of rights is at its most

22   tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

23          While the Supreme Court has left open the possibility that "a single violation of federal

24   rights, accompanied by a showing that the municipality has failed to train its employees to handle

ORDER GRANTING MOTION FOR PARTIAL DISMISSAL - 11

1    recurring situations presenting an obvious potential for such a violation, could trigger municipal

2    liability," *Bd. of Cnty. Comm'rs*, 520 U.S. at 409, this does not excuse plaintiffs' baseline

3    obligation to advance a plausible allegation that the municipality failed to adequately train its

4    employees in the first instance, *Hyde v. City of Willcox*, 23 F.4th 863, 875 (9th Cir. 2022) ("While

5    deliberate indifference can be inferred from a single incident[,] . . . an inadequate *training policy*

6    *itself* cannot be inferred from a single incident."). The Estate has not done so here; its allegations

7    are wholly conclusory. As for the Estate's argument that it might find a basis for its claim in

8    discovery, that is not how this works. "Threadbare recitals of the elements of a cause of action,

9    supported by mere conclusory statements, do not . . . unlock the doors of discovery for a plaintiff

10   armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. This *Monell* theory is

11   dismissed.

12           2.   Ratification

13           With respect to the Estate's ratification theory for *Monell* liability, the complaint alleges

14   that "[t]he City, County and KCCF, through its [sic] approval of the Defendant officers' actions,

15   has ratified the officers' conduct and thereby showed that the Defendant officers acted pursuant to

16   and in a manner consistent with the polices [sic], customs, and practices of the City, County and

17   KCCF." Dkt. No. 26 at 8. King County contends that the Estate fails to state a ratification theory

18   because it "fails to identify any specific policymaker . . . who made a conscious, affirmative choice

19   to approve any named subordinate's decision, and the basis for that decision, that is alleged to be

20   a constitutional violation." Dkt. No. 29 at 11. Notably, the Estate does not assert in its opposition

21   that its allegations suffice to state a ratification theory; instead, it relies exclusively on the ACLU

22   Letter and KCCF Report to argue that "Defendant was aware and knew of the constitutional

23   violations at KCCF" and "approved and ratified the jail staff/officer's decisions and actions as set

24   forth in the Report[.]" Dkt. No. 39 at 9.

"A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "To show ratification, a plaintiff must show that the 'authorized policymakers approve[d] a subordinate's decision and the basis for it,'" and "[t]he policymaker must have [had] knowledge of the constitutional violation and actually approve[d] of it." *Id.* (quoting *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999)). "A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Id.* Nor is "mere failure to discipline[.]" *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 788 (9th Cir. 2022) (citing *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds sub nom. City & County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015)). Instead, ratification requires an authorized policymaker to make a "conscious, affirmative choice" to endorse a subordinate's actions and the basis for them. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992); *see also Puente v. City of Phoenix*, 123 F.4th 1035, 1066 (9th Cir. 2024).

The Estate's conclusory allegations here fall far short of the requirement to plausibly allege that a policymaker affirmatively "adopted and expressly approved of the acts of others who caused the constitutional violation." *Sheehan*, 743 F.3d at 1231.  This *Monell* theory is dismissed.

       3.   Official Policy or Longstanding Practice or Custom

As with its ratification theory, the Estate advances bare allegations for *Monell* liability on the basis of an official policy or longstanding practice or custom in the amended complaint. Specifically, it alleges that "[t]he myriad of [sic] failures described in this complaint and the paragraphs above were due to, and were emblematic of, King County's and City's inadequate and reckless policies, procedures, customs, and supervision regarding custody officers performing their official duties." Dkt. No. 26 at 14. It further accuses King County and the City of Seattle of being "deliberately indifferent to the fact that its [sic] inadequate and reckless policies, procedures,

1    customs and supervision would be the moving force behind its [sic] Defendant officers and KCCF

2    staff failing to perform their official duties." *Id.*; *see also id.* at 5. King County contends that "the

3    Amended Complaint fails to identify any express . . . policy that was the moving force behind the

4    alleged constitutional violations," and "there are no facts pled that suggest a longstanding practice

5    or custom, a series of transactions, or a pattern of misconduct related to medical screening of

6    individuals upon booking or forced dress-outs." Dkt. No. 29 at 7–8. In response, aside from again

7    relying on the ACLU Letter and KCCF Report, the Estate argues that "it can be reasonably inferred

8    that King County is aware of and should follow a policy of inquiring as to conditions of individuals

9    if they are strapped down to a gurney for nonmedical issues and as to the use of de-escalation as

10    well as training its jail staff/ officers on mental health issues as this is customary training of the

11    State of Washington." Dkt. No. 39 at 8 (citing nothing).

12            "Although a constitutional violation must result from 'official municipal policy,' a county

13    need not expressly adopt the policy." *Christie*, 176 F.3d at 1235. It is sufficient that the

14    constitutional violation occurred pursuant to a "longstanding practice or custom." *Gillette*, 979

15    F.2d at 1346; *see Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404 (1997)

16    ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate

17    decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice

18    is so widespread as to have the force of law."). The custom must be so "persistent and widespread"

19    that it constitutes a "permanent and well settled [county] policy." *Monell*, 436 U.S. at 691. In other

20    words, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it

21    must be founded upon practices of sufficient duration, frequency and consistency that the conduct

22    has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th

23    Cir. 1996); *see also, e.g.*, *Meehan v. Los Angeles County*, 856 F.2d 102, 107 (9th Cir. 1988) (two

24

1    incidents not sufficient to establish custom); *Davis v. Ellensburg,* 869 F.2d 1230, 1233–34 (9th

2    Cir. 1989) (manner of one arrest insufficient to establish policy).

3         The Estate's allegations fail to identify a policy, let alone a longstanding practice or

4    custom. Its *Monell* theory premised on an official policy or longstanding custom or practice is

5    dismissed.

6    **E.    Leave to Amend**

7         Where a complaint or claim is dismissed, leave to amend should be "freely give[n]." Fed.

8    R. Civ. P. 15(a)(2). This policy "is to be applied with extreme liberality." *Owens v. Kaiser*

9    *Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of*

10   *Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). Only if the Court "determines that

11   the allegation of other facts consistent with the challenged pleading could not possibly cure the

12   deficiency" should leave to amend be denied. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,

13   806 F.2d 1393, 1401 (9th Cir. 1986). Here, King County "is not requesting dismissal of the

14   [*Monell*] claims with prejudice," and instead asks the Court to dismiss "with leave to amend." Dkt.

15   No. 43 at 6–7. The Court grants the Estate the opportunity to amend its *Monell* claim.

16                           **III.   CONCLUSION**

17        For the foregoing reasons, the Court GRANTS King County's Motion to Dismiss the

18   Estate's *Monell* claim with leave to amend. Dkt. No. 29. The Court STRIKES the KCCF Report,

19   Dkt. No. 40-2, from the record. Should Plaintiffs choose to amend their complaint, they must file

20   both a redlined and clean version of the amended complaint by no later than March 28, 2025.

21        Dated this 14th day of March, 2025.

22

23                                    _____
                                      Lauren King
                                      United States District Judge
24

ORDER GRANTING MOTION FOR PARTIAL DISMISSAL - 15