1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
9                                   AT SEATTLE

10

11   ESTATE OF MICHAEL ROWLAND, by          CASE NO. 2:24-cv-01240-LK
     and through its personal representative,
     Karen Rowland, and in her individual      ORDER DENYING PLAINTIFFS'
12   capacity, et al.,                         MOTION FOR LEAVE TO FILE
                                               AMENDED COMPLAINT
13                        Plaintiffs,
14            v.
15   KING COUNTY et al.,
16
                          Defendants.
17

18        This matter comes before the Court on Plaintiffs' "Motion for Leave to Amend and Second

19   Amended Complaint and Add Additional Defendants." Dkt. No. 56. Defendants oppose the

20   motion. Dkt. Nos. 57, 59. For the reasons outlined below, the Court denies the motion.[1]

21                          I.    BACKGROUND

22        On April 19, 2022, Michael Rowland was arrested by Seattle police at a Sheraton Hotel

23

24   _____
     [1] Because the Court can decide the motion based on the parties' filings, it denies Plaintiffs' request for oral argument.
     Dkt. No. 56 at 1.

     ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT - 1

following reports of a disturbance. Dkt. No. 26 at 2. During his interactions with law enforcement, Mr. Rowland behaved erratically and made several "non sensical [sic]" statements, leading officers to believe that he was experiencing a mental health episode. *Id.* at 2, 9. Officers eventually used physical force to arrest Mr. Rowland. *Id.* at 2, 9–10. He was then transferred via ambulance to the King County Correctional Facility ("KCCF") in Seattle. *Id.* at 2. A spit mask had been placed on Mr. Rowland by law enforcement; he arrived at KCCF with it still in place. *Id.* at 10. His limbs were also strapped down to a gurney during transit. *Id.*

According to the complaint, jail staff failed to properly screen Mr. Rowland for "physical or mental issues" before accepting him into custody. *Id.* at 3, 10. However, he had "obvious and noteworthy injuries that staff members should have immediately recognized and treated," including a leg injury. *Id.* at 3; *see also id.* at 10–11. Jail staff also "knew or should have been aware" that Mr. Rowland had mental health issues. *Id.* at 11. An individual in a nearby holding cell witnessed correction officers rolling a handcuffed Mr. Rowland down the hall in a restraint chair with the spit mask still in place. *Id.* at 3. The corrections officers put Mr. Rowland in a prone position and restrained him while they changed him out of his street clothing and into jail-issued clothing. *Id.* at 3, 11–12. The spit mask was then removed, and jail staff left Mr. Rowland in the prone position on the floor of his cell. *Id.* at 12. Shortly thereafter, a corrections officer noticed that Mr. Rowland was not breathing; he was later pronounced dead. *Id.* The King County Medical Examiner noted in her autopsy report that Mr. Rowland had a number of blunt force injuries and died suddenly during physical restraint. *Id.*

Karen Rowland, Mr. Rowland's widow, has sued King County in her individual capacity and in her capacity as representative of Mr. Rowland's estate. *Id.* at 1, 4. Candice Robinson, Mr. Rowland's daughter, also appears to advance claims in the lawsuit despite not being listed as a Plaintiff in the caption. *Id.* at 1, 4, 15, 19; *see also* Dkt. No. 49 at 3 (explaining that this oversight

appears to be one of many "careless mistakes" in Plaintiffs' submissions to the Court). Plaintiffs filed their original complaint against King County and "unknown officers" on August 13, 2024. Dkt. No. 1.[2] On November 13, 2024, the parties stipulated to Plaintiffs' filing of an amended complaint that added as Defendants the City of Seattle and Seattle Police Officers Zachary Grant, Kyle Corcorn, David Kim, Daniel Reyes, Thomas Pressley, Jeffrey Parent, An Do, Jacob Qualls, Aubrey Gerth, and Mikael Daranciang. Dkt. No. 24 at 1–2; Dkt. No. 24-1 at 6.[3] Plaintiffs advanced four causes of action: (1) "Count I – Fourth Amendment," which appears to advance an excessive force claim by the Estate under the Fourth and Fourteenth Amendments against all Defendants; (2) "Count II—State Law Claim[:] Negligence" by Plaintiffs against all Defendants; (3) "Count III–State Law Claim[:] Wrongful Death" by Plaintiffs against all Defendants; and (4) an unnumbered count titled "Monell Claim" by the Estate against King County and KCCF. Dkt. No. 26 at 13–19.

On December 6, 2024, King County filed a motion to dismiss the Estate's *Monell* claim. Dkt. No. 29. Briefing on that motion was complete on January 17, 2025. Dkt. No. 43. On January 21, 2025, the parties submitted a joint status report regarding case scheduling, and the Court entered a scheduling order on January 27, 2025. Dkt. Nos. 44, 46. The deadline to join parties was February 24, 2025, and the deadline to amend pleadings was March 24, 2025. Dkt. No. 46 at 1.

On March 14, 2025, the Court granted King County's motion to dismiss, holding that the Estate had failed to state a claim under *Monell*. Dkt. No. 49 at 9–15. The Court granted Plaintiffs leave to amend that claim, stating that "[s]hould Plaintiffs choose to amend their complaint, they must file both a redlined and clean version of the amended complaint by no later than March 28,

---

[2] King County Executive Dow Constantine was also listed as a Defendant in the initial complaint, but he was voluntarily dismissed before Plaintiffs filed their amended complaint. Dkt. No 1 at 1; Dkt. No. 23.

[3] In yet another careless mistake, Plaintiffs list Mikael Daranciang in the caption but do not describe his role in the case in the amended complaint. *See* Dkt. No. 26 at 1, 6.

2025." *Id.* at 15. The Clerk's Office then erroneously stated in the docket summary for the Order that Plaintiffs "must file both a redlined and clean version of the amended complaint by no later than **5**/28/2025." Dkt. No. 49 docket summary (now-stricken docket text). This error was later corrected to reflect the March 28, 2025 deadline. *See id.* (docket text).

## II.   DISCUSSION

Plaintiffs did not file a second amended complaint before the March 28, 2025 deadline. Instead, roughly two months later on May 26, 2025, they filed their "Motion for Leave to Amend and Second Amended Complaint and Add Additional Defendants." Dkt. No. 53. This motion was stricken for failure to comply with Local Civil Rule 7(e)(6)'s requirement to certify the motion's word count. Dkt. No. 55. Plaintiffs filed the now-pending amended motion on May 27, 2025. Dkt. No. 56. Their proposed Second Amended Complaint adds as Defendants American Medical Response Ambulance Services, Inc.; Innovative Practices, LLC; and nine "King County Jail Staff/Officers." Dkt. No. 54-2 at 6–9. The Second Amended Complaint also adds allegations regarding (1) the duty owed by the City of Seattle, "through its officers," to "persons with whom they come into contact with," *id.* at 24; (2) breach of "that duty" by all Defendants, *id.* at 25. Despite the fact that the Court already dismissed Plaintiffs' *Monell* claim, they note in their motion that they informed Defendants that they "agreed to dismiss [their] Monell claim." Dkt. No. 56 at 2. Nevertheless, Plaintiffs' proposed amended complaint contains the same claims as their prior complaint, including a *Monell* claim. Dkt. No. 54-2 at 20–27.

## A.   Legal Standards Under Rules 15 and 16

Plaintiffs argue that they should be granted leave to amend under Federal Rule of Civil Procedure 15. Dkt. No. 56 at 6–7. However, because the February 2025 deadline to join parties and the March 2025 deadlines to amend pleadings set by the Court's Scheduling Order and Order Granting the Motion for Partial Dismissal have passed, Dkt. No. 46 at 1; Dkt. No. 49 at 15,

1    Plaintiffs must satisfy Rule 16(b)'s "good cause" standard. *See Coleman v. Quaker Oats Co.*, 232

2    F.3d 1271, 1294 (9th Cir. 2000). "Unlike Rule 15(a)'s liberal amendment policy which focuses on

3    the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing

4    party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking

5    the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Leave

6    to amend is appropriate only if the amended pleading deadline could not be met despite the

7    diligence of the moving party. *Id.* The Court's inquiry thus focuses on the moving party's reasons

8    for seeking a modification and, "[i]f that party was not diligent, the inquiry should end." *Id.*; *accord*

9    *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

10        In assessing diligence, the Court may consider "whether the moving party knew or should

11   have known the facts and theories raised by the amendment in the original pleading." *Jackson v.*

12   *Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990); *see also Acri v. Int'l Ass'n of Machinists &*

13   *Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new

14   theories are not reviewed favorably when the facts and the theory have been known to the party

15   seeking amendment since the inception of the cause of action.").[4] The Court may likewise deny

16   leave to amend if the plaintiff knew of the facts and theories at issue sufficiently in advance of the

17   deadline to timely assert them. *See, e.g.*, *Seattle Pac. Indus., Inc. v. S3 Holding LLC*, 831 F. App'x

18   814, 816–17 (9th Cir. 2020) (party that moved for leave to amend three months after the amended

19   pleadings deadline failed to exercise diligence because it could have asserted its proposed claims

20   before that deadline); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir.

21   1999) (denying leave to amend where plaintiff's motion "came several months after the stipulated

22

23   [4] The Court recognizes that this is identical to the undue delay inquiry under Rule 15. However, courts in this district have looked to the moving party's pre-existing knowledge of allegedly new facts and theories to measure diligence and, by extension, ascertain whether good cause exists under Rule 16. *See, e.g.*, *Kremerman v. Open Source Steel, LLC*, No. C17-953-BAT, 2018 WL 4700526, at *3–4 (W.D. Wash. Oct. 1, 2018); *MMMT Holdings Corp. v. NSGI Holdings, Inc.*, No. C12-01570-RSL, 2014 WL 2573290, at *3–4 (W.D. Wash. June 9, 2014).

24

deadline for amending or supplementing the complaint" and "[n]othing in the proposed amended complaint relied on facts that were unavailable before the stipulated deadline."). In addition, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion[.]" *Mammoth Recreations*, 975 F.2d at 609. Conversely, if the Court determines that good cause exists, it next assesses whether the proposed amendment is proper under Rule 15. *Mammoth Recreations*, 975 F.2d at 608.

**B.    Plaintiffs Were Not Diligent**

Plaintiffs argue that they should be granted leave to amend because (1) they "learned of [the new defendants] through discovery," (2) Defendants "knew or should have known" that these defendants "were involved in this case and should have added [sic] as either a necessary and/or indispensable party to this action," and (3) "the deadlines allow for amendment." Dkt. No. 56 at 4, 6–7. Defendants retort that the motion "comes well after the expiration of the court-ordered deadlines to add new parties and amend the pleadings," Dkt. No. 59 at 4, and the record "is utterly devoid of good cause" meriting amendment at this stage of the proceedings, Dkt. No. 57 at 1; *see also* Dkt. No. 59 at 3–4. King County specifies that as of January 13, 2025—over a month before the deadline for joinder, and over two months before the deadline for amended pleadings—Plaintiffs were in receipt of initial disclosures revealing the names of, and relevant information regarding, the individuals and entities Plaintiffs now seek to add as defendants. Dkt. No. 57 at 2–4; Dkt. No. 58 at 2–3, 7. The City of Seattle adds that Plaintiffs' motion "misrepresent[s] the purpose and nature of their proposed Second Amended Complaint" because the motion does not substantively address the "new allegations and claims against the existing defendants that could have, and should have, been asserted in prior versions of the complaint." Dkt. No. 59 at 2.[5]

---

[5] The Court notes that LCR 7(e) does not permit the City to incorporate the County's arguments by reference as it purports to do in its opposition. *Id.*

1    King County is correct that Plaintiffs were in receipt of the information concerning the

2    additional parties they now seek to join well before they sought to amend their complaint. *See* Dkt.

3    No. 59 at 4; *see also Jackson*, 902 F.2d at 1388. On January 13, 2025, King County disclosed the

4    names of the relevant individuals and the fact that those individuals had "information regarding

5    the incarceration, evaluation, and treatment of Michael Rowland, their interactions with and

6    observations of him, statements made by him, efforts to resuscitate him, the investigation of his

7    death, their training, and relevant policies and practices." Dkt. No. 57 at 2–4; Dkt. No. 58 at 7. The

8    disclosure also listed American Medical Response ("AMR") and identified the AMR employees

9    who "responded to, treated, or transported Mr. Rowland on April 19, 2022." *Id.* at 10. Furthermore,

10   on February 12, 2025, King County served Plaintiffs with its first production of discovery, which

11   provided documents detailing the involvement of the individuals Plaintiffs now seek to join to the

12   case. Dkt. No. 57 at 3–4; Dkt. No. 58 at 2–3.

13   Plaintiffs provide no reason why they could not join the proposed new defendants prior to

14   the February 24, 2025 deadline or why they could not otherwise amend their complaint by the

15   March 24, 2025 deadline.[6] Instead, they assert for the first time in their reply brief that "[o]n March

16   24, 2025, [one of the] Counsel for Plaintiffs was involved in a car crash," causing "symptoms that

17   precluded him from working on matter [sic], and he continues to experience these symptoms."

18   Dkt. No. 60 at 2. The reply also asserts that the impacted attorney "advised counsel for Defendants

19   that he was involved in a car crash . . . [and] also informed this Court of his health condition in

20   another case pending before this Court[.]" *Id.* There is no reason Plaintiffs could not have raised

21   this argument in their motion, and it is therefore waived. *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th

22

23   _____

24   [6] As King County observes, "[i]f Plaintiffs believed that additional time to review the County's production was
necessary prior to the February 24 deadline, it was incumbent on them to request relief from the case scheduling order
under Rule 16," but "[t]hey elected not to do so." Dkt. No. 57 at 8.

Cir. 1996) ("Issues raised for the first time in the reply brief are waived."); *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented for the first time in Reply are waived."). Furthermore, even if Plaintiffs had not waived the argument (they have), (1) providing notice of the crash to the Court in a totally different case does not somehow constitute a timely request for relief from a deadline *in this case*;[7] (2) Plaintiffs have at least two attorneys, and they make no effort to explain why the other attorney for Plaintiffs could not have timely complied with the deadlines; and (3) for the reasons stated above, by the date of the crash, any additional parties should have already been joined and any amendments (other than amendments to the *Monell* claim) should have been ready to file.[8] In sum, Plaintiffs were not diligent.

To the extent Plaintiffs' arguments rely on the theory that they should be considered diligent because they relied on the later stricken docket entry that stated the incorrect deadline for amendment, *see* Dkt. No. 49 (docket text), that argument fails for at least three reasons. First, the Court only granted Plaintiffs leave to amend their *Monell* claim; nothing in the Court's order granting that leave purported to alter the March 24, 2025 deadline for all other amendments or the February 24, 2025 deadline to join parties. *See generally* Dkt. No. 49. Second, docket text that is not a minute order is not a standalone order; it is merely a ministerial entry by the Clerk's Office meant to *summarize* the Court's order. Fed. R. Civ. P. 79(a)(3). Plaintiffs do not demonstrate diligence by relying on docket text rather than the actual order of the Court. *Rude v. Adeboyeku*, No. CV 05-1274 (RCL), 2007 WL 9770926, at *2 (D.D.C. Mar. 30, 2007) ("[P]laintiff's counsel

---

[7] The Court further notes that in the separate case, the stipulated motion that discussed the car crash was filed on April 7, 2025. *Avery v. City of Seattle*, No. 22-cv-00560-LK, Dkt. No. 56 (W.D. Wash.). Plaintiffs did not file anything in this case until May 26, 2025, and even then they did not seek extension of any deadlines or mention the crash. *See generally* Dkt. Nos. 53–54, 56.

[8] The Court also agrees with the City of Seattle that Plaintiffs' motion does not indicate or address all of their proposed amendments. Dkt. No. 59 at 2–3.

was not reasonable in relying on a docket entry that clearly conflicted with an Order signed by the Court" and in "refus[ing] to pursue any clarification of the issue[.]"); *see also United States v. Hark*, 320 U.S. 531, 534–35 (1944) ("Where, as here, a formal judgment is signed by the judge, this is prima facie the decision or judgment rather than a statement in . . . a docket entry."); *Wilcox v. Georgetown Univ.*, 987 F.3d 143, 149 (D.C. Cir. 2021) ("Docket entries kept by the Clerk of Court are required to 'briefly show . . . the substance and date of entry of each order and judgment,' Fed. R. Civ. P. 79(a)(3); they are not authorized to alter or amplify that substance."). Third, the fact that Plaintiffs filed a motion for leave to amend rather than simply filing their amended complaint demonstrates that they were aware that their proposed amended complaint fell outside the bounds of the leave granted by the Court in its March 14, 2025 order. *See also* Dkt. No. 56 at 2 (Plaintiffs stating that "[i]n May of 2025," they "reached out to Defendants' counsel to inquire about stipulating to a Motion to Amend [the] Complaint").

Because Plaintiffs have failed to demonstrate that there is good cause for late amendment, the Court declines to consider whether amendment would be proper under Rule 15. *Mammoth Recreations*, 975 F.2d at 608.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Leave to Amend and Second Amended Complaint and Add Additional Defendants. Dkt. No. 56.

Dated this 18th day of August, 2025.

Lauren King
United States District Judge